# REPORTS

OF

## CASES ARGUED AND DETERMINED

IN THE

# Supreme. Court of South Carolina

Justices of the Supreme Court During the Period Comprised in this Volume

Hon. EUGENE B. GARY, Chief Justice

Hon. D. E. HYDRICK, Associate Justice

Hon. R. C. WATTS, Associate Justice

Hon. T. P. FRASER, Associate Justice

Hon. GEO. W. GAGE, Associate Justice

Hon. THOS. P. COTHRAN, Associate Justice

Hon. J. HARDIN MARION, Associate Justice

---

## 11132

### A. M. LAW & CO. v. FARMERS & MERCHANTS BANK

(115 S. E., 812)

1. BANKS AND BANKING—BANK EXAMINER, WHILE IN "CONTROL" OF "BUSINESS" OF BANK, MAY DIRECT ANY TRANSACTION THAT COULD HAVE BEEN DONE BY BANK BEFORE INTERVENTION.—In view of Civ. Code, 1912, § 2648, limiting bank examiner's powers to possession of property and assets of insolvent banks, 27 St. at Large, p. 791, providing that bank examiner, at the bank's request, may take possession and "control" of the property and "business" of a bank for 30 days, gave the examiner authority to direct any business transaction to be done that could have been done through the officers before the examiner's intervention; and hence a contract for a sale of stocks owned by a bank, made by the bank under instruction of the examiner while the bank was in his control, was valid; "control" meaning superintendence, government, and "business" meaning financial dealings, buying and selling, traffic in general.

2. BANKS AND BANKING—CLAIM FOR FAILURE TO DELIVER STOCKS WHILE BANK IN CONTROL OF EXAMINER IS NOT PREFERRED CLAIM.— As a claim for damages for failure to deliver stocks sold by a

bank while in control of the bank examiner could not be considered as expenses incurred in liquidating an insolvent estate, it was not a preferred claim.

Before G. B. GREENE, SPECIAL JUDGE, Anderson, June, 1922. Affirmed.

Action by A. M. Law & Co., against the Farmers & Merchants Bank, a corporation in liquidation. From a judgment for plaintiff, ranking its claim, as to priorities, with claims of ordinary or general creditors only, both parties appeal.

The following is the decree of the Circuit Court:

This action was brought by plaintiff against defendant to recover the sum of $2,577.50 as damages for failure to deliver certain cotton mill stocks in accordance with an alleged contract. The complaint alleges that on the 25th day of April, 1921, the defendant bank closed its doors on account of not having sufficient funds to pay depositors, and that the State Bank Examiner, Jas. H. Craig, took immediate charge of the affairs of said bank at the request of a majority of the directors thereof; that on three separate dates, to wit, the 2d day of May, 1921; the 3d day of May, 1921, and the 9th day of May, 1921, the defendant, with the consent, by the authority and at the request of the State Bank Examiner, offered for sale to plaintiff certain cotton mill stocks mentioned and described in paragraph 4 of the complaint, and amounting in value to an aggregate sum of $19,345; that plaintiff accepted the offer of defendant and bought said stocks; that defendant failed and refused to deliver said stocks according to its agreement with plaintiff, and thereby damaged plaintiff in the sum of $2,577.50, the market price of said stocks having advanced that much over the contract price as alleged in the complaint. The complaint also alleges that said stocks were sold by defendant to plaintiff for the purpose of enabling it to resume business within 30 days after the State Bank Examiner assumed control of the bank's affairs; that the damage sustained

by plaintiff as above set forth was a cost incurred by defendant in its efforts to resume business, and is therefore a preferred claim against said bank, which is now in the process of liquidation.

Defendant by its answer denied that the stocks mentioned and described in the complaint were offered for sale by it, or by any one having authority, or apparent authority, to offer the same in its behalf, and defendant therefore denied any liability to plaintiff on account of said stocks. The answer did admit, however, that plaintiff, relying upon the defendant to comply with its contract to deliver said stocks, sold the same to its customers, and, when defendant failed to deliver same, plaintiff was compelled to go into the market and buy similar stocks for its customers at an advanced market price, which resulted in damage to plaintiff in the amount sued for in this action. The answer also denied that the claim of plaintiff would constitute a preference as alleged in the complaint.

By consent of the parties the matter was heard by me in open Court without a jury. Several witnesses were sworn and examined in the trial of the case, and as there was practically no conflict in the testimony offered it may be stated in substance as follows: .

Plaintiff was engaged, at the time mentioned in the complaint, among other things, in buying and selling stocks and bonds, its principal place of business being at Spartanburg, S. C. On May 2, 1921, one of its agents called the assistant cashier of defendant bank over the phone, and asked if he personally had for sale such stocks as those described in the complaint. The officer of the bank replied that he had none of his own, but that the bank had stocks of that description which it might sell. After investigation, and after communicating with Mr. Craig, the bank examiner, the said officer of the bank informed plaintiff's agent that the bank would sell it certain stocks, which plaintiff's agent agreed to take at the price mentioned in the complaint. On the 3d day of May, 1921, additional stocks were sold by said officer

of the bank to plaintiff in the same way; and on the 9th day of May, 1921, still another block of stocks was sold by defendant through its said officer to plaintiff. The three sales above mentioned amounted in the aggregate to the sum alleged in the complaint, and also included the stocks described therein. The assistant cashier of defendant bank, through whom the sales were made, testified that he made the sales to plaintiff after consultation with the State Bank Examiner, and with his approval and consent, and by his direction, and that said sales were made for the purpose of raising cash and thereby enabling the defendant bank to continue in business. Plaintiff's agent, through whom the negotiations of sales were made, and also the president of plaintiff corporation, testified that soon after the purchase of the first two blocks of stocks they came to Anderson and had a talk with the State Bank Examiner, and he consented to and approved the sales that had already been made to plaintiff and authorized further sales.

The testimony of all the witnesses showed that defendant refused to deliver any of the stocks which had been sold as aforesaid, and there was ample testimony that plaintiff had been damaged in the sum of $2,577.50 on account of its failure to obtain said stocks in accordance with its purchase. The testimony showed that the defendant bank never resumed business and that the affairs of the bank are being liquidated by order of the Court of Common Pleas of Anderson County under the supervision and control of the State Bank Examiner as provided in the Act of 1912. From the testimony I must find as matters of fact that the officers of the defendant bank sold to plaintiff the stocks mentioned and described in the complaint at the prices therein mentioned; said sale or sales being made with the knowledge, consent, and approval and by the direction of the State Bank Examiner and for the purpose of raising cash and thereby enabling said bank to continue in business; that the defendant thereafter failed and refused to deliver said stocks to plaintiff; and that on acount of defendant's failure to deliver said

stocks the plaintiff in this action was damaged in the sum of $2,577.50.

Having reached the conclusions above indicated as to the facts of this case, it now becomes my duty to pass upon the questions of law involved herein. As I see it, there are two main questions for my consideration, and they are as follows: First, did the State Bank Examiner, or those acting under his direction, have power and authority under the law to make a valid contract of sale of the stocks in question? Second, if the State Bank Examiner had such authority, and the plaintiff has been damaged by reason of a breach of such contract, is its claim entitled to preferred payment in the liquidation of the affairs of the defendant bank?

The answer to the first question depends upon the construction to be placed upon the Act of 1912, 27 S. C., Statutes at Large, p. 791. This Act is as follows: "Be it enacted by the General Assembly of the State of South Carolina, that the Bank Examiner shall have the right at any time, upon the request of a majority of the directors of any bank or trust company, which may be incorporated under the laws of this State, to take and retain sole possession and control of the property and business of such corporation for not exceeding thirty days: *Provided, however,* That during said time the said corporation shall have the right either to resume business or with the consent of the examiner to obtain from the Judge of the Court of Common Pleas presiding in the Circuit where said corporation is located an order authorizing said corporation to liquidate its affairs under the sole supervision and control of the examiner and subject to the order of said Court: And *provided, further,* That during the periods when the examiner is in control of said corporation, no action or proceeding against said corporation or its stockholders shall be instituted except in the cause in which the order of liquidation was granted. Immediately on taking charge, the Bank Ex-

aminer shall call a meeting of the stockholders." Previous to the passage of this Act the Statute law of South Carolina (1 Code, 1912, § 2648), provided that, if the State Bank Examiner should find that any bank was insolvent, or that its business was so conducted as to jeopardize the interests of the depositors, creditors, or stockholders, he should have full power, upon consultation with the State Treasurer, to take and retain possession of all the assets and property of every description belonging to said bank: *Provided,* That he should first have applied for an order from a Circuit Judge to that effect.

The old Act, it seems to me, was passed merely for the purpose of facilitating the liquidation of the affairs of an institution that had become insolvent or was being conducted in the manner set forth in the Statute. Read in the light of the old Act, the new Act, it seems to me, was passed for the purpose of affording relief to a bank that might be in straits and allowing it an opportunity to regain its feet, so to speak, and continue in business. This Act provides that resort may be had to its provisions at any time a majority of the directors of the bank might desire to do so. The powers conferred upon the Bank Examiner by the older Statute were limited to the possession of the assets and property of the bank. The powers conferred by the later Act were extended to the possession and control of the property and business of such corporation for not exceeding 30 days. The words "control" and "business." as used in this Act, carry the powers of the examiner beyond those of a mere custodian of property and assets. The word "control." as defined by Webster, when used in this connection, means power or authority to check or restrain; restraining or regulating influence; superintendence; government, etc. The word "business," as defined by the same authority, when used in this connection, means financial dealings; buying and selling; traffic in general, etc. It seems to me, therefore, that when the Legislature gave to the Bank Examiner the con-

trol of the business of the defendant bank, it meant nothing more than that said examiner should be the one to say what of its regular dealings or transactions could be carried on during the period in which he was in charge.

It is argued on behalf of defendant that the words, "that during said time the said corporation shall have the right either to resume business," etc., show that the Bank Examiner had not been invested with power to carry on the business in any manner whatsoever. These words, it seems to me, when construed with the Act as a whole, mean that that said corporation shall have the right to retake its property and regain the control of its own business. The use of the word "control" in the second proviso of the Act under consideration, it seems to me, goes further to show that it was the intent of the Act that the business of said corporation should be carried on under the supervision and direction of the examiner. There is nothing in this Act to indicate that the examiner could not direct any business transaction to be done that could have been done by the bank through its officers before the intervention of said examiner. As stated above, the purpose of the Act was to give a bank in straits an opportunity to right itself and continue business. Whatever is to be done to this end must of necessity be done during the period in which the examiner is in control. If no business transaction could be done during that period, the purpose of the Act would be defeated. I know of nothing that would better facilitate the accomplishment of this purpose than the conversion of such property as the stocks in question into cash at the market value. I must hold, therefore, that the defendant bank, acting under instructions of the State Bank Examiner, could make a valid contract of sale of the stocks in question.

The next question for me to determine is whether or not the claim of plaintiff is entitled to a preference in the liquidation of the affairs of the defendant bank. No authorities have been brought to my attention

which hold that such a claim is to be preferred over simple contract or general creditors, and I can see no valid reason for such a holding on the part of this Court. This claim could not be considered as expenses incurred in liquidating an insolvent estate, such as are usually held to be entitled to priority of payment over general creditors.

Having reached the conclusions hereinabove set forth, it is ordered, adjudged, and decreed that the plaintiff in this action has a valid and existing claim against the defendant herein in the sum of $2,577.50, and that plaintiff's said claim ranks, as to priorities, with the claims of the ordinary or general creditors of the defendant, Farmers & Merchants Bank, of Anderson, S. C.

*Mr. A. H. Dagnall,* for plaintiff, cites: *Examiner took charge of bank under* 27 Stat., 791. *Rules of construction of Statute:* 36 Cyc., 1110, 1112, 1113, 1134, 1135, 1140, 1174; 7 C. J., 482. *Plaintiff a preferred creditor:* 100 S. C., 13; 64 S. C., 278; 22 Cyc., 1319; 23 R. C. L. 110; Par. 119; 34 Cyc., 354; 45 S. C., 464.

*Messrs. Watkins & Prince,* for defendant, cite: *Power of Bank Examiner:* 1 Thomp. Corp. Sec.; 460; 31 Nev., 456; 156 Wis., 72; 153 Ky., 798.

February 7, 1923.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

For the reasons therein stated, the decree of his Honor the Circuit Judge is affirmed.